**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Michael Wayne BRONSON, Defendant-
Appellant.**

**No. 173-70.**

United States Court of Appeals,
Tenth Circuit.

Oct. 14, 1971.

Rehearing Denied Nov. 15, 1971.

John J. Immel, Asst. U. S. Atty., Wichita, Kan. (Robert J. Roth, U. S. Atty. and Stephen K. Lester, Asst. U. S. Atty., on the brief), for plaintiff-appellee.

David M. Bryans, Denver, Colo., for defendant-appellant.

Before HILL, SETH and HOLLOWAY, Circuit Judges.

HOLLOWAY, Circuit Judge.

This is a direct appeal from a judgment of conviction and sentence for a violation of the Dyer Act, 18 U.S.C. § 2312, entered on a plea of guilty. The appeal challenges the validity of the plea and judgment, claiming violation of Rule 11, F.R.Crim.P., and arguing that the plea was involuntary on two grounds discussed below.

The record shows that appellant first entered a plea of guilty in September, 1969, to a one-count indictment charging violation of the Dyer Act. He made a prior appearance for an omnibus hearing before a Magistrate. The Court went over the elements of the offense which appellant said he understood. Appellant also said he had read the indictment and had discussed the offense with his attorney. The Court informed him that he could plead not guilty and was guaranteed the right to trial by jury, confrontation, assistance of counsel and process to obtain witnesses. The following exchange then occurred between the Court and appellant:

"I am also sure that Mr. Bonwell explained to you that we have in the Federal system what is known as a Youth Correction Act, and if you are a person that is between the ages of eighteen and twenty-five, it is possible that you might be suitable for correctional treatment as a youth offender under the Federal Youth Correction Act, the provisions of which are set forth in 18 United States Code 5005 to 5024. Sentences under the Youth Correction Act are not considered punishment, but, rather, supervised correctional treatment.

"The main thing about the Youth Correction Act, that it is supervised correctional treatment, is that if you plead guilty or were convicted and the Court determined you were suitable for such correctional supervision, your commitment could be for six years, or possibly longer.

"Now, I want you to realize that should you plead guilty and should the Court find you suitable for treatment under the Youth Correction Act, there is a possibility of this commitment, to which you would be subjecting yourself, and it includes the possibility of a Youth Correction Act sentence. In other words, if you plead guilty and are sentenced under the regular law for incarceration in a penitentiary for punishment, the maximum to which you could be sentenced would be five years. And if you plead guilty and are sentenced through the Youth Correction Act, you could be committed for correctional treatment for a period of six years or possibly longer. When you finished that, of course, the Court may, under the Youth Correction Act sentence, the Court may, if it is recommended to him and he deems it appropriate, erase from your record the indications of this punishment, which can have some useful connotations for your future conduct and rights.

"Now, do you understand what I have said to you?

"THE DEFENDANT: Yes, sir, I do, Your Honor.

"THE COURT: I will ask you again: Have you consulted with your attorney before entering a plea in this matter?

"THE DEFENDANT: Yes, I have, sir.

"THE COURT: And have you had ample time to consult with him?

"THE DEFENDANT: Yes, I have, sir.

"THE COURT: I would ask you then, Michael Wayne Bronson, also known as Robert Armandariz, how do you plead to the indictment?

"THE DEFENDANT: I plead guilty, Your Honor."

Further inquiry was then made concerning the voluntariness of the plea. The Court inquired and was told there had been no threats or promises of any kind made by anyone to obtain the plea; that no one connected with the Government had threatened, forced, persuaded or induced appellant to enter a plea of guilty; and appellant stated he was entirely satisfied with the services of his counsel. The attorney said he was satisfied the plea was made voluntarily with understanding of the nature of the charge and consequences of the plea. The Court asked if appellant understood he was making no plea of innocence but fully and voluntarily admitted his guilt. Appellant answered that he did, and the Court stated the plea would be accepted and a presentence report was requested.

In October, 1969, appellant and counsel appeared again for sentencing, and the Court reviewed details of the offense and appellant's history. However, because the Court felt there were reasonable grounds to believe that appellant might benefit from treatment under the Youth Corrections Act, he was committed for observation and study pursuant to 18 U.S.C. § 5010(e).

In February, 1970, appellant appeared again and details of the offense and appellant's history were again reviewed. He was found to be a youth offender as defined by 18 U.S.C. § 5005 et seq., and suitable for handling under the Act. The Court ordered appellant committed until discharged by the Federal Youth Correction Division as provided in 18 U.S.C. § 5017(c), and this appeal followed.

First, appellant contends that he was misinformed as to the consequences of a sentence under the Youth Corrections Act. The argument centers on the Court's statement, quoted above, that if appellant plead guilty and was sentenced under the Youth Corrections Act, he

could be committed for correctional treatment for six years or possibly longer, and the statement which the Court added that when that was finished, "the Court may, if it is recommended to him and he deems it appropriate erase from your record the indications of this punishment, which can have some useful connotations for your future conduct and rights."

We agree that the statement was incorrect as to the procedure and possibility of expunging the conviction under certain circumstances. When the statement was made the study during custody had not been made and, of course, the Court had not determined whether sentence under the Act was appropriate. If such a sentence was imposed, it is true that the youth offender who is held for the maximum sentence appears ineligible for the conviction being expunged, which does automatically occur on unconditional discharge before expiration of the maximum sentence, or if the Court places the youth offender on probation but unconditionally discharges him before its term expires.[1]

■■ Rule 11 does enjoin the Court to address the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. If those consequences are not understood the plea is not valid. See Young v. United States, 433 F.2d 626 (10th Cir.), cert. denied, 401 U.S. 995, 91 S.Ct. 1242, 28 L.Ed. 534; Jenkins v. United States, 420 F.2d 433 (10th Cir.); Murray v. United States, 419 F.2d 1076 (10th Cir.). Where the possibility of a longer sentence under the Youth Corrections Act exists it must be brought to the attention of the defendant, as well as the possible sentence under the substantive statute, for the plea to be valid. See Harper v. United States, 368 F.2d 53 (10th Cir.). Moreover it has been held that lack of knowledge that a guilty plea to a narcotics charge would result in a sentence without the possibility of probation and parole would render the plea invalid. See Jenkins v. United States, supra.

■ However, we view the facts and circumstances here as not involving such especially heavy consequences as were present in the *Jenkins* case, nor comparable to the failure to advise of a possibly longer sentence under the Youth Corrections Act, as in the *Harper* case. The incorrect point complained of in the Court's detailed discussion is not of sufficient gravity to justify invalidating the plea.[2] We feel the Court carefully covered the essentials as required by Rule 11 and that the record demonstrates the entry of a voluntary plea.

■ Secondly, appellant says he was not informed that he would be ineligible for parole under 18 U.S.C. § 4202. It is true that if the Court determined to sentence under the Youth Corrections Act, such parole procedure does not apply. However, the Act does carry provisions permitting even earlier release than such general parole statute. It provides that the Youth Correction Division may release a committed youth offender at any time conditionally under supervision, and that it may discharge the offender unconditionally at the expiration

---

1. 18 U.S.C. § 5021 provides:
   "(a) Upon the unconditional discharge by the division of a committed youth offender before the expiration of the maximum sentence imposed upon him, the conviction shall be automatically set aside and the division shall issue to the youth offender a certificate to that effect.
   "(b) Where a youth offender has been placed on probation by the court, the court may thereafter, in its discretion, unconditionally discharge such youth offender from probation prior to the expiration of the maximum period of probation theretofore fixed by the court, which discharge shall automatically set aside the conviction, and the court shall issue to the youth offender a certificate to that effect."

2. Cf. United States v. Washington, 341 F.2d 277, 286 (3d Cir.), cert. denied, 382 U.S. 850, 86 S.Ct. 96, 15 L.Ed.2d 89; United States v. Cariola, 323 F.2d 180, 186 (3d Cir.).

of one year from the date of conditional release. See 18 U.S.C. § 5017(a) and (b). And conditional release under the Act has been referred to as a parole. See Workman v. United States, 337 F.2d 226, 227 (1st Cir.); and Turner v. United States, 320 F.Supp. 1204, 1206 (E.D. La.). The practical impact on the defendant is the important consideration. We conclude that there was no failure at all to inform appellant of the practical effect of the Youth Corrections Act.

Affirmed.